IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00523-NYW-NRN

CATHERINE SPOON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ANGI INC., a Delaware corporation,

Defendant.

---

### DEFENDANT ANGI INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

---

Defendant Angi Inc. ("Angi"), respectfully moves this Court for an order striking Plaintiff Catherine Spoon's ("Plaintiff") class allegations from the Complaint, pursuant to Federal Rules of Civil Procedure ("Rule") 12(f), and 23.

### MEMORANDUM OF LAW

I.    **INTRODUCTION**

Plaintiff seeks two represent two class definitions in her complaint – a National Do-Not-Call ("DNC") Registry class and a Caller ID class. Both class definitions, however, are fatally flawed, and in a manner that discovery cannot repair.

The National DNC Registry class must be stricken for at least three reasons. First, it is improperly defined based upon the merits of class members' claims rather than objective criteria, since it includes only individuals who did not provide consent to be

1

contacted. However, determining whether a class member consented to the calls is a critical merits inquiry that cannot be resolved through objective criteria. Second, the DNC class is overly broad and lacks commonality because it is not limited to residential telephone subscribers, even though the Telephone Consumer Protection Act's ("TCPA") DNC provisions apply only to residential lines. Third, the DNC class is overly broad and lacks commonality because it is not limited to individuals who personally registered their phone numbers on the DNC Registry. Yet, individuals must personally register their telephone number on the DNC Registry in order to state a TCPA claim. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *5 (N.D. Iowa June 9, 2022).

The Caller ID class definition suffers from the same defects. It is overbroad because it is not limited to residential subscribers, and it is impermissibly defined by the merits because it includes only those who received "telemarketing" calls or messages. Allowing such a class to proceed would unfairly prejudice Angi by predetermining a critical merits issue—either in favor of class members or by excluding individuals altogether.

Since the class definitions are fatally flawed for critical reasons that cannot be cured in discovery, they must be stricken here and now.

II.    **PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges violations of the Telephone Consumer Protection Act ("TCPA") based on receipt of alleged text messages to her phone number without her consent and while her phone number was on the National DNC Registry. *See* Plaintiff's Complaint ("Compl."), at ¶¶ 15-24. Further, Plaintiff alleges "[e]ach call displayed only the phone number and not the name of the telemarketer on the Caller ID—the name was not

transmitted." *Id.*, at ¶ 16. Based on these alleged violations, Plaintiff seeks to represent the following two nationwide classes:

> **National Do Not Call Registry Class**: All persons throughout the United States (1) to whom Angi delivered, or directed to be delivered, more than one phone call or text message within a 12 month period for purposes of encouraging the purchase of a product or service from Angi, (2) where the person's telephone number had been registered with the National Do Not Call Registry for at least thirty (30) days before Angi delivered or directed to be delivered at least two of the calls or text messages within the 12-month period, (3) from four-years prior to the filing of the initial complaint in this action through the date notice is disseminated to a certified class, and (4) for whom Angi claims prior express consent was obtained in the same manner as Angi claims prior express consent was obtained from Plaintiff, or where the number was reassigned and Angi claims prior express consent from the prior subscriber.

> **Caller ID Class**: All persons in the United States from four years prior to the filing of this action through the date notice is sent to the Class who (1) received more than one telemarketing call or text message made by or on behalf of Angi, agents either promoting Angi's products or services or that could have resulted in the sale of an Angi product or service, (2) on the person's cellular telephone, (3) where the name of the telemarketer or the seller was not transmitted to the called party as caller identification information.

*Id.*, at ¶ 25.

III.   **<u>LEGAL STANDARD</u>**

Federal Rule of Civil Procedure ("Rule") 12(f) provides that a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

To certify a class action, a plaintiff must satisfy all of Rule 23(a)'s requirements and also satisfy one of Rule 23(b)'s provisions. *See, e.g., Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014). Although courts typically assess the viability of class claims at the certification stage, district courts "are permitted to make such determinations on the pleadings and before discovery is complete when it

is apparent from the complaint that a class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (citation omitted); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs."). In making this determination, courts apply the same standards applied at the certification stage, and ask whether a complaint's allegations satisfy Federal Rule of Civil Procedure 23's requirements. *See Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at *3 (D. Colo. Dec. 4, 2024) ("A decision to grant a motion to strike class allegations ... is the functional equivalent of denying a motion to certify a case as a class action.") (citing *Young v. Standard Fire Ins. Co.*, No. 21-35777, 2023 WL 21465, at *1 (9th Cir. Jan. 3, 2023)).[1]

"A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." *Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019) (quotations omitted); s*ee also Blanton v. United Healthcare Servs., Inc.*, No. 24-CV-484-SMD-JMR, 2025 WL 2636381, at *10 (D.N.M. Sept. 12, 2025) ("Although courts typically assess the viability of class claims at the certification stage, district courts 'are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot

---

[1] *See also Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021), cert. denied, —— U.S. ——, 142 S. Ct. 2675, 212 L.Ed.2d 762 (2022) (determining that district court may grant motion to strike class claims because "[t]his is consistent with Rule 23(c), which governs class-action certification"); *Id*. at 1094 (concluding district court abused its discretion by denying motion to strike without considering whether plaintiff "could bring a class action under Rule 23(b), as it [was] apparent from the pleadings that the class [could not] be certified" under Rule 23(b)(2) (quotation omitted)).

be maintained.'"); *see also* 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.) ("It seems like the sensible approach ... is to permit class allegations to be stricken at the pleading stage—in part or in their entirety—if it is apparent from the pleadings that the class cannot be certified or that the definition of the class is overbroad." (footnote omitted)). Under Federal Rule of Civil Procedure 12(f), if it is "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis ... [courts may] delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (quotations omitted).

This Court has also indicated that "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1273 (D. Colo. 2023) (quoting *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)) (alteration added).

IV. **ARGUMENT—PLAINTIFF'S CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW**

A. **Plaintiff's DNC Class and Caller ID Class Must Be Stricken Because They Are Defined Based Upon the Merits of Class Members' Claims Instead of Objective Criteria.**

A class must be defined using administratively feasible and objective criteria. *See Warnick v. Dish Network LLC*, 301 F.R.D. 551, 556 (D. Colo. 2014) ("If the members of the class can be ascertained by reference to objective criteria, then the class is adequately defined.") (quoting *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012)).

However, a class defined based upon the merits of a claim is simply not certifiable. *See Hanni v. Am. Airlines, Inc.,* 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) ("A class

5

definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class.") (quoting 5 James W. Moore, Moore's Federal Practice § 23.21(3)(c) (Matthew Bender 3d ed. 2011).[2] This is so because merits determinations must not be made at the certification stage—a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *See Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'"). And that, in turn, creates problems of fairness for defendants and violates the protections of the one-way intervention rule.[3]

Here, both of Plaintiff's proposed class definitions are based upon the merits of class members' claims instead of objective criteria. The DNC class must be stricken because it only includes individuals who did not provide consent. Similarly, the Caller ID class must be stricken because it only includes individuals who received telemarketing calls and messages.

### 1. The DNC Class Only Includes Individuals Who Did Not Provide Consent.

The Federal Communications Commission's ("FCC") do-not-call regulations restrict "telephone solicitations" to numbers on the do-not-call database ("NDNCR"). *See*

---

[2] *See also Sonner v. Schwabe N. Am., Inc.*, No. 515CV01358VAPSPX, 2019 WL 4266808, at *2 (C.D. Cal. July 2, 2019) ("The order defining the class should avoid … terms that depend on resolution of the merits…") (quoting Federal Judicial Center, Manual for Complex Litigation, Fourth § 21.222 (2004)); *see also Gamboa v. KISS Nutraceuticals*, 777 F. Supp. 3d 1210, 1221 (D. Colo. 2025) (holding that Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

[3] One-way intervention occurs when the potential members of a class action are allowed to await ... final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests." *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974) (internal quotation marks omitted).

47 C.F.R. § 64.1200(c)(2). The FCC, however, defines "telephone solicitation" to exclude a call or message to any person for whom the caller had prior express invitation or permission to contact. *Id*. § 64.1200(c)(2)(ii). Thus, absence of consent or permission is an affirmative allegation that must be included to state a claim for violation of the NDNCR rules.

Accordingly, courts properly reject class definitions where issues of consent are present. *See Ung v. Univ. Acceptance Corp.*, 319 F.R.D. 537, 543 (D. Minn. 2017) ("[T]he issue of consent makes it nigh impossible to determine the members of the putative class without a member-by- member analysis and individualized proof….The 'disparate factual circumstances' regarding each class member's consent simply 'prevents the class from being cohesive and thus [renders] it unable to be certified under Rule 23(b)(2).'"); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *9 (S.D. Cal. July 9, 2024) (finding the plaintiff's class to be flawed because it included individuals who may have consented to receiving calls from the defendant, thereby diminishing standing under the TCPA); *see also Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (holding that a TCPA class was not ascertainable because it would require mini trials to identify individuals who did not provide prior express consent).[4]

Here, Plaintiff's DNC Class includes all persons in the United States to whom Angi placed more than one call or text message within a 12-month period and "for whom Angi

---

[4] *See also Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification in a TCPA case and finding that the class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent); *Jamison v. First Credit Servs.*, 2013 WL 387217, at *8 (N.D. Ill. July 29, 2013); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (finding that the inclusion of a substantial number of people who voluntarily provided their phone numbers to receive commercial calls rendered the proposed class "overbroad and the class unfit for certification").

claims prior express consent was obtained in the same manner as Angi claims prior express consent was obtained from Plaintiff, or where the number was reassigned and Angi claims prior express consent from the prior subscriber." Compl., at ¶ 25. As such, this proposed class includes an indefinite swath of individuals who lack viable claims against Angi and who will lack standing. As calls placed with the requisite consent and permission are not actionable under the TCPA, the class therefore includes many individuals who have not been harmed by Angi. Since the class includes these individuals who provided consent, the class should not be certified. *See Warnick*, 301 F.R.D. at 557 (holding that "a class is overbroad, and should not be certified," if it includes "a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct.").

### 2. The Caller ID Class Only Includes Individuals Who Received Telemarketing Calls and Messages.

47 C.F.R § 64.1200(d), provides, in relevant part, "[n]o person or entity shall initiate any call [or text message] for telemarketing purposes to a residential telephone subscriber…" (emphasis added). Therefore, whether a consumer received a "telemarketing" call is a merits determination.

Yet, to determine who is in the Caller ID class here, the Court would need to review the file of each class member to determine whether the message was telemarketing in nature. This is obviously problematic from a predominance perspective—individualized review will be needed since the class is not limited to any specific message—but this is also plainly a merits determination. That is, at the class certification stage this Court will need to decide whether or not a class member received a telemarketing call or text message. And that is per se improper. *See Thompson v.*

8

*Vintage Stock, Inc.,* No. 4:23-CV-00042-SRC, 2024 WL 492052, at *10 (E.D. Mo. Feb. 8, 2024) (striking the class definition in count three because in order to certify this class, the court would have to determine whether a text message is a "telephone solicitation")

Because membership in the Caller ID class is determined by whether the consumer received a telemarketing call or text message, Angi would be unfairly prejudiced by a proceeding where a crucial merits inquiry has already been determined in the class members' favor—individuals are either already determined to have won on this critical issue, or they are not members of the class at all. *See e.g., Olney v. Job.com, Inc.,* No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (stating that "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class.")

As Plaintiff's proposed Caller ID class requires a merits-based determination, this Court should strike Plaintiff's Caller ID class. *See Thompson*, 2024 WL 492052, at *10.

### B.    Plaintiff's DNC Class and Caller ID Class Must Be Stricken Because They Are Overly Broad.

"[A] vague definition is inadequate and a court may 'deny class certification where the class definitions are overly broad, amorphous, and vague.'" *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003). "[I]t is proper for a court to strike class allegations when the proposed class definition is overbroad." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1155 (D. Colo. 2019) (citing *Edwards*, 2012 WL 4378219, at *5)).

Courts regularly decline to certify overbroad classes. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (affirming denial of class

certification because the proposed class was overly broad). And, where a "defined class is facially overbroad, it is appropriate to strike the class allegations at the pleadings stage." *Vann v. Dolly, Inc.*, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-78 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."). As the Seventh Circuit has aptly observed:

> Even if a class's claim is weak, the sheer number of class members and the potential payout that could be required if all members prove liability might force a defendant to settle a meritless claim in order to avoid breaking the company. While that prospect is often feared with large classes, **the effect can be magnified unfairly if it results from a class defined so broadly as to include many members who could not bring a valid claim even under the best of circumstances**.

*Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 825 (7th Cir. 2012) (citing *Oshana*, 472 F.3d at 514) (emphasis added). This is particularly true in TCPA actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(c)(3); *see also Kohen*, 571 F.3d at 678 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.")

Here, Plaintiff's proposed DNC class is massively overbroad because: (1) it is not limited to residential telephone subscribers; and (2) it is not limited to individuals who personally placed their number on the DNC Registry.

10

Similarly, Plaintiff's proposed Caller ID Class is massively overbroad because it is not limited to residential subscribers.

### 1. The DNC Class and Caller ID Class Are Not Limited to Residential Telephone Subscribers.

47 C.F.R. § 64.1200(c) provides, in relevant part "[n]o person or entity shall initiate any telephone solicitation" to "[a] ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry..." (emphasis added). Hence, the residential usage of the telephone number called is a critical element of both claims. *See Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 655 (W.D. Tenn. 2020) ("To succeed on a claim alleging violations of the relevant regulations, a plaintiff must [allege] ... that she was a 'residential telephone subscriber'"); *Perrong v. Victory Phones LLC*, 519 F. Supp. 3d 193, 197 (E.D. Pa. 2021) ("whether [Plaintiff] has a residential or cellular line or otherwise is dispositive to whether his claim can survive a motion to dismiss").

Here, Plaintiff's classes are over-inclusive in that they include individuals who have no valid claim because the call or text message may have been to a business telephone subscriber or to non-residential cellular phone numbers. By the statute's clear language, the call or text must have been made to a residential telephone subscriber. Because Plaintiff's class definitions are not limited to residential telephone subscribers, the class is overly broad and must be stricken. *See e.g., Edwards*, 2012 WL 4378219, at *6.

### 2. The DNC is Not Limited to Individuals who Personally Placed their Number on the DNC Registry.

47 C.F.R. § 64.1200(c), provides, in relevant part "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber ***who has registered his or her telephone number on the national do-not-call registry*** of persons who do

not wish to receive telephone solicitations that is maintained by the federal government."
(emphasis added). The plain language of Section 64.1200(c) indicates that Section
227(c)(5)'s private action exists only for a residential telephone subscriber who has
registered his or her telephone number on the national DNC Registry.

Here, Plaintiff's DNC class is overly broad because it is not limited to individuals
who personally placed their number on the DNC Registry. The class, as defined in the
Complaint, includes all individuals "to whom Angi delivered, or directed to be delivered,
more than one phone call or text message within a 12-month period; and (2) where the
person's telephone number had been registered with the National Do Not Call Registry
for at least thirty (30) days." Compl., at ¶ 25. This definition encompasses all individuals
whose number is registered on the DNC Registry, regardless of whether an individual
personally registered it. However, those individuals who did not personally register their
telephone number on the DNC Registry lack a valid claim. *See Rombough*, 2022 WL
2713278, at *5 (dismissing case with prejudice where Plaintiff failed to allege that she
registered her telephone on the DNC registry).

Allowing this action to proceed with the proposed class definition as is would
therefore work an inherent unfairness against Angi, because it would be required to
undertake the burden and expense of defending against a putative class that contains
members with no standing and no conceivable claim. *See Klassen v. Solid Quote LLC*,
No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023)
(defendant arguing that the proposed class was overbroad because it includes any
person whose number was registered on the DNC Registry without regard to who did the
registering and the Court modifying the proposed class to instead state "the person's

telephone number was registered by the person on the National Do-Not-Call Registry 30 or more days.").

        C.        **The Over-Breadth of the Classes Also Result in the Classes Facially Lacking Commonality in a Way that Discovery Cannot Resolve**.

The commonality requirement of Rule 23 demands that there be "questions of law or fact common to the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-478 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–15 (1997)). Commonality requires more than simply whether class members have suffered a violation of the same provision of law. C*ontrollable On-Site Prot. Sec. Sys., Inc. v. Telular Corp.*, No. 4:14CV00487 JM, 2016 WL 11778133, at *2 (E.D. Ark. Apr. 12, 2016) ("'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law.") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2545, 180 L. Ed. 2d 374 (2011)).[5]

If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima

---

[5] *See also* Herbert Newberg & Alba Conte, Newberg, Class Actions § 6.20, at 6–82 (3d ed. 1992) (noting that "[t]he plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similarly situated," and that class action pleadings "should not be merely conclusory").

facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart*, 564 U.S. at 349.

In the instant case, Plaintiff's classes do not satisfy the commonality requirement of Rule 23(a) due to their overly broad definitions. Indeed, the classes are overbroad because they include individuals who are not residential telephone subscribers. These broad class definitions necessitate individualized inquiries for each member. Some class members will lack a valid claim because they didn't personally list their phone number on the national DNC Registry, and it would be impossible to determine through common evidence who has a valid claim amongst the entire class.

As a result, the classes fail to meet the commonality requirement under Rule 23(a)—as it is impossible to resolve the critical issues common to all members "in one stroke." *Manning*, 725 F. 3d, at *59.

**D.     The Court Should Not Wait Until the Certification Stage to Address These Issues—It Should Strike Plaintiff's Class Allegations Here and Now.**

Plaintiff will undoubtedly ask the Court to overlook the flaws in her proposed classes and allow her to leverage the cumbersome machinery of class discovery. That would be manifestly unfair and does not comport with how class actions are designed to work. Angi has raised valid challenges to the class definitions proposed in the Complaint. There is no reason to allow the case to proceed to discovery, let alone certification briefing, when it is apparent at the outset that the proposed class definitions cannot be certified. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444 (5th Cir. 2007) ("Where

it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *Barnes*, 2025 WL 1027431, at *5 (granting motion to strike the class allegations in the complaint and holding that a defendant "is entitled to know the class definition being alleged against [it]").[6]

This approach is consistent with the mandate set forth in the Federal Rules of Civil Procedure, which require courts to rule on class certification issues "[a]t an early practicable time" following the filing of a complaint. Fed. R. Civ. P. 23(c)(1)(A). Should Plaintiff's facially uncertifiable classes be allowed to proceed, Angi will be forced to engage in extensive and burdensome discovery and litigation only for class certification to be inevitably denied, which wastes both the parties' and judicial resources. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("[T]he problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them."). These inefficiencies can be avoided by striking Plaintiff's classes that are plainly incapable of certification.

## V.    **CONCLUSION**

For the foregoing reasons, Angi respectfully requests this Court to strike Plaintiff's class allegations in the Complaint.

Dated: April 6, 2026                    **TROUTMAN AMIN, LLP**

By: */s/ Brittany Andres*

Eric J. Troutman
Puja Amin
Brittany A. Andres

---

[6] *See also Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (granting motion to strike class allegations because "the proposed class includes many members who have not been injured"); *Hill*, 946 F. Supp. 2d at 829 ("This is a case where 'the issues are plain enough from the pleadings' to allow the court to conclude that no class can be certified.").

400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
E-mail: troutman@troutmanamin.com
E-mail: amin@troutmanamin.com
E-mail: brittany@troutmanamin.com

*Counsel for Defendant Angi Inc.*

## CERTIFICATION

I hereby certify that on April 6, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Brittany A. Andres*

Brittany A. Andres

## CERTIFICATIONS

In accordance with the District of Colorado Local Civil Rule 7.1, I hereby certify that on April 6, 2026, I conferred with opposing counsel in good faith to resolve this matter. Opposing counsel indicated that Plaintiff opposes this Motion.

In accordance with the District of Colorado Local Civil Rule 17, I hereby certify that this memorandum contains 4,931 words, in compliance with the Local Civil Rules.

In accordance with The Honorable Nina Y. Wang's Standing Order, I hereby certify that generative artificial intelligence was not used to draft this filing.

/s/ Brittany A. Andres

Brittany A. Andres