IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00523-NYW-NRN

CATHERINE SPOON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ANGI INC., a Delaware corporation,

Defendant.

---

**DEFENDANT ANGI INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendant Angi Inc. respectfully moves this Court for an order dismissing Plaintiff Catherine Spoon's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF LAW**

I.    **INTRODUCTION**

Plaintiff Catherine Spoon ("Plaintiff") has now filed a First Amended Complaint (Dkt. No. 16) ("FAC"), adding new allegations but leaving the core defect unchanged. Plaintiff attempts to state a claim under the Telephone Consumer Protection Act's ("TCPA") Do-Not-Call ("DNC") provisions, based primarily on the receipt of a text message

1

allegedly sent by Defendant Angi, Inc. ("Angi"). She claims the text message was a "call" and therefore violated the TCPA. Applying the correct analysis, the Court will find that text messages are not "calls" and thus, cannot violate 47 U.S.C. § 227(c).

For years, some courts treated text messages as actionable under the TCPA due to effectively binding guidance issued by the Federal Communications Commission ("FCC"). However, a recent Supreme Court ruling shattered that required deference. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (requiring district courts to "independently determine… the meaning of the law under ordinary principles of statutory interpretation"). Not only is that deference no longer required—it is now no longer permitted. *See id.* Applying the proper analysis, the Court should find that the TCPA, enacted in 1991 prior to the advent of text messages, does not regulate text messages. Thus, Plaintiff's claims must fail.

Applying the correct framework, courts have held that text messages are not "calls" as set forth in the TCPA and are not actionable under the statute. *See Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477-AW-MAF, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) ("The statutory text here is clear, and a text message is not a 'telephone call.'… Certainly, no ordinary person would think of a text message as a 'telephone call.'"); *Stockdale v. Skymount Prop. Grp., LLC*, et al., No. 1:25 CV 1282, 2026 WL 591842, at *2 (N.D. Ohio March 3, 2026) (saying that "this Court joins several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'").[1]

---

[1] *See also Sayed v. Naturopathica Holistic Health, Inc*., No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Stockdale*, 2026 WL 591842, at *1 (same); *Richards v. Shein Distribution Corp.*, No. 1:25-cv-01385-JMS-TAB, 2026 WL 847584 at *5 (S.D. Ind. Mar. 26, 2026) (same); *James v. Smarter Contact, Inc. et. al.*, No. 8:25-CV-1657-KKM-SPF, 2026 WL 879244 at *5 (M.D. Fla. Mar.

Because the TCPA provision Plaintiff relies upon regulates telephone "calls"—not text messages—her claim fails as a matter of law. Text messages cannot constitute "telephone solicitations" under the TCPA's DNC framework, and courts have now expressly confirmed that such claims are not cognizable. Accordingly, Angi respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

## II.    **<u>PLAINTIFF'S ALLEGATIONS</u>**

Plaintiff alleges she received "a series of calls" and a single text message from Angi between November 2025 and December 2025. Plaintiff's Amended Complaint ("FAC"), ¶¶ 19-25. Plaintiff alleges that Plaintiff received three calls from Angi from the same 214-833-1153 number on December 5, 2025, December 8, 2025 and December 10, 2025. FAC, ¶ 20.

The single text message read: "Hey, this is Derick with Angi. I'm trying to reach out to Castillo Custom Homes. I saw your work and made a note to follow up with you. I'm sure you guys are busy. Are you able to add a few projects to your schedule? I have some projects in Dallas that may be of interest to you. If you're up for it, I'd like to start sending some of these homeowners your way. Let me know when you're available or call me at 260-286-2241. Thank you! Derick at Angi." *Id*. at ¶ 25.

Because Plaintiff's claims are based primarily on text messages, she cannot state claim under the TCPA's DNC provisions.

---

31, 2026) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (hereinafter *Fashion Nova*) (same); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *4 (M.D. Fla. Feb. 26, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *4-5 (N.D. Ga. Feb. 17, 2026) (same); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026) (hereinafter *Kendo Holdings*) (same); *Irvin, v. Sonic Industries Services, LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *5 (N.D. Ga. Apr. 20, 2026) (same).

III.    **<u>LEGAL STANDARD</u>**

The Supreme Court has clarified that there is no "absolute-deference rule" to rulemaking by the FCC. *McLaughlin*, 606 U.S. at 168. It is effectively the opposite, as a "District Court should interpret the [TCPA] as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.*; *see also Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 413 (2024) ("Courts need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted). Additionally, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

IV.    **<u>ARGUMENT—PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE 47
U.S.C. § 227(c) DOES NOT REGULATE TEXT MESSAGES</u>**

As set forth above in Section III, the Court must independently determine whether Section 227(c) of the TCPA restricts text messages. *McLaughlin*, 606 U.S. at 168. It cannot defer to the FCC's interpretations of the TCPA—whose rulemaking has recently been directly overturned as overbroad. *See Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n,* 127 F.4th 303 (11th Cir. 2025) (holding that the FCC exceeded its statutory authority by creating heightened consent standards compared to the statutory text).

In conducting an independent analysis of the legislative history and letter of the statute, the Court will see that Section 227(c) does not regulate text messages.

Plaintiff's claims must be dismissed because they are based on a legal theory that is foreclosed by the plain text of the TCPA. In order to assert a claim under the TCPA, a plaintiff must allege receipt of more than one "telephone solicitation" within any twelve-month period. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). The TCPA defines "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

47 U.S.C. § 227(c)(5) expressly creates a private right of action for "[a] person who has received *more than one telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). The statute does not mention text messages. *Id*. While courts have historically been required to rely on FCC interpretations and attempts to expand the TCPA, the Supreme Court's recent decision in *McLaughlin* frees the courts (and requires them) to interpret the TCPA as Congress intended. *McLaughlin*, 606 U.S. at 156. As such, this

Court is no longer bound by agency deference and must "independently determine for itself whether the agency's interpretation of a statute is correct" using "ordinary principles of statutory interpretation." *Id*. Thus, "[c]ourts must interpret every statute 'in accord with the ordinary public meaning of its terms at the time of its enactment.'" *Davis*, 797 F. Supp. 3d at 1272 (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020)).

The ordinary meaning of "telephone call" in 1991, when the TCPA was enacted, unambiguously referred to a voice-to-voice communication. We all remember this, as text messaging technology did not yet exist. The TCPA was enacted on December 20, 1991; while the first text message was not sent until nearly a year later. *Compare* 47 U.S.C. § 227 (originally enacted on December 20, 1991), *with First SMS Text Message Is Sent, History* (Oct. 4, 2022), https://www.history.com/this-day-in-history/December-3/first-sms-text-message-sent ("On December 3, 1992, the first SMS text message in history is sent…."). Congress, therefore, could not possibly have intended the term "telephone call" to encompass a technology that was not yet in use.

Even putting historical usage aside, as the *Davis* court explained, the ordinary meaning and usage of the term "telephone call" simply does not encompass text messages:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a "telephone call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."

*Davis*, 797 F. Supp. 3d at 1273 (citation modified).

Both the historical and ordinary meaning interpretations of Section 227(c) are

reinforced by the canons of statutory construction. The TCPA's definition of "telephone solicitation" in 47 U.S.C. § 227(a)(4) refers to the initiation of a "telephone call or message." 47 U.S.C. § 227(a)(4) (emphasis added). Yet, in the private right of action provision at issue here, 47 U.S.C. § 227(c)(5), Congress deliberately chose to provide a remedy only for the receipt of more than one "telephone call." *Id*. (emphasis added). As the *Davis* court explained, courts must "presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Davis*, 797 F. Supp. 3d at 1274 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.,* 143 F.4th 1331, 1344 (11th Cir. 2025)); *cf. Iraola & CIA, S.A. v. Kimberly-Clark Corp*., 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.")). Congress's choice to omit the words "or message" from the private right of action was a deliberate one that forecloses Plaintiff's claims.

Amendments to the TCPA further support the conclusion that text messages are not "calls" under Section 227(c). Congress amended 47 U.S.C. § 227(e) of the TCPA, which requires the usage of caller identification, from "a call made using a telecommunications service or IP-enabled voice service" to "a call made using a voice service or a ***text message*** using a ***text messaging service***." 47 U.S.C. § 227(e) (emphasis added). The fact that Congress amended one provision of the TCPA to include text messages but did not similarly amend Section 227(c) demonstrates that Congress views a text message as a distinct form of communication to a "call" (which it is). *See Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) ("Where Congress includes particular language in one section of a statute but omits it in another section of

the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010)).

In the wake of *McLaughlin*, eleven courts have applied the statute's plain text and structure to dismiss Section 227(c) claims based on text messages. *See Davis*, 797 F. Supp. 3d at 1275 (holding that "telephone call" cannot include texts); *Jones*, 792 F. Supp. 3d at 900-01 (rejecting reliance on FCC's § 227(b) rulemaking in the § 227(c) context); *Sayed*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("The omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'"); *Stockdale*, 2026 WL 591842, at *2; *Richards*, 2026 WL 847584, at *5; *James*, 2026 WL 879244, at *5; *Fashion Nova*, 2026 WL 847568, at *5; *Lopresti*, 2026 WL 964758, at *4; *Radvansky*, 2026 WL 456919, at *4-5; *Kendo Holdings*, 2026 810929, at *3; *Irvin*, 2026 WL 1098403, at *5.

In *Davis*, the Northern District of Florida squarely rejected a Section 227(c) claim based on text messages. *Davis*, 797 F. Supp. 3d at 1275. The court explained that cases treating texts as "calls" arose under 47 U.S.C. § 227(b), which broadly prohibits "any call," not the narrower "telephone call" in Section 227(c). *Id.* at 1273.[2] The *Davis* court found that no precedent or logic supports treating a text as a "telephone call" under § 227(c)(5). *Id*.

Additionally, in *Jones*, the court dismissed Section 227(c) claims based on text messages after performing an analysis of TCPA's statutory text and using the FCC's

---

[2] It also explained that Supreme Court never decided the issue; in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2, (2021), the Court merely assumed for purposes of 47 U.S.C. § 227(b) that texts could qualify as calls—an assumption with no force in the Section 227(c) context. *Id*. Indeed, the Supreme Court at that point still upheld the standard of deference to FCC Rulemaking.

rulemaking history as evidence. *Jones,* 792 F. Supp. 3d at 900–01. The *Jones* court found that the FCC's at-issue order, which interpreted "calls" to include text messages, did so by explicitly referencing its authority under 47 U.S.C. § 227(b) of the TCPA. *Id*. The court correctly reasoned that the FCC's interpretation under 47 U.S.C. § 227(b) (regulating the use of an automatic telephone dialing system) does not apply to the Do-Not-Call provisions of Section 227(c). *Id*. Thus, even the FCC's own reasoning does not support a cause of action for text messages in (purported) violation of Section 227(c).

Here, Plaintiff's entire FAC is predicated on her receipt of a text message in violation of Section 227(c). FAC, ¶ 25. She does not assert the violation of any other provision of the TCPA. Although she alleges two different types of Section 227(c) violations, they are both based on the receipt of a text message—not calls. *Id*. Thus, the analysis here is simple: if text messages are not actionable under Section 227(c), Plaintiff cannot state either of her claims.[3] Thus, based on the statute's plain text and established canons of statutory construction, all of Plaintiff's causes of action fail to state claims and must be dismissed. *See Jones,* 792 F. Supp. 3d at 901–02 (*"*The Court finds that the Plaintiffs have failed to state claims for violations of Section 227(c) of the TCPA, 47 C.F.R. § 64.1200(c), and 47 C.F.R. § 64.1200(d) given that allegedly 'violative text messages' stand 'at the core of Plaintiffs' factual allegations'"); *Davis*, 797 F. Supp. 3d at 1275; *Sayed*, 2025 WL 2997759, at *2; *Stockdale*, 2026 WL 591842, at *2; *Richards*, 2026 WL 847584, at *5; *James*, 2026 WL 879244, at *5; *Fashion Nova*, 2026 WL 847568, at *5;

---

[3] While Plaintiff occasionally uses the term "calls" in her FAC in an apparent attempt to bring her allegations within the statute, the FAC makes clear that she is referring exclusively to text messages. *See* FAC, ¶¶ 25-32; *see Jones*, 792 F. Supp. 3d at 902 ("Indeed, the Plaintiffs' reference to receipt of telephone calls in violation of the TCPA are few compared to their reference to text messages and inclusion of text message screenshots; the crux of the CAC is that their receipt of repetitive text messages prompted them to seek relief pursuant to the TCPA.").

*Lopresti*, 2026 WL 964758, at *4; *Radvansky*, 2026 WL 456919, at *4-5; *Kendo Holdings*,

2026 810929, at *3; *Irvin*, 2026 WL 1098403, at *5.

V.      **CONCLUSION**

For the foregoing reasons, Angi respectfully requests that this Court dismiss

Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 7, 2026                    **TROUTMAN AMIN, LLP**

By: */s/ Brittany Andres*
Eric J. Troutman
Puja Amin
Brittany A. Andres
400 Spectrum Center Drive, Suite 1450
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
E-mail: troutman@troutmanamin.com
E-mail: amin@troutmanamin.com
E-mail: brittany@troutmanamin.com

*Counsel for Defendant Angi, Inc.*

## **CERTIFICATIONS**

In accordance with the District of Colorado Local Civil Rule 7.1, I hereby certify that on April 29, 2026, I conferred with opposing counsel in good faith to resolve this matter. Opposing counsel indicated that Plaintiff opposes this Motion.

In accordance with the District of Colorado Local Civil Rule 17, I hereby certify that certify that this memorandum contains 3,058 words, in compliance with the Local Civil Rules.

In accordance with The Honorable Nina Y. Wang's Standing Order, I hereby certify that generative artificial intelligence was not used to draft this filing.

*/s/ Brittany A. Andres*
Brittany A. Andres

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Brittany A. Andres*
Brittany A. Andres