**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00523-NYW-NRN

CATHERINE SPOON, on behalf of herself and all others similarly situated,

        Plaintiff,

v.

ANGI, INC., a Delaware corporation,

        Defendant.

---

**RESPONSE IN OPPOSITION TO MOTION TO STAY DISCOVERY**

---

## I.    INTRODUCTION

This alleged class action case challenges Defendant Angi, Inc.'s ("Defendant" or "Angi") violations the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"). Plaintiff Catherine Spoon alleges that Angi violates the TCPA in two (2) distinct ways. First, Angi placed multiple telemarketing phone calls and at least one telemarketing text message to her despite her number being on the National Do Not Call Registry and despite Spoon providing no prior express permission or invitation to receive calls and texts from Angi. Second, Angi failed to transmit the required Caller ID information when placing such calls and text messages.

In response, Angi has filed a flurry of motions, including a Rule 12(b)(6) Motion to Dismiss (dkt. 19), a Motion to Strike Class Allegations (dkt. 20), and the instant Motion to Stay Discovery (dkt. 21). Angi's Motion to Stay Discovery should be denied—Angi fails to carry its burden to establish that its motions are likely to be dispositive of the claims at issue (they aren't).

First, the motion to dismiss is premised on Angi's belief that text messages are not

1

protected by the TCPA. (*See* Dkt. 19.) While Plaintiff will explain in opposition to the motion to dismiss that this is incorrect and courts throughout the country have rejected similar arguments, what matters here is that the Amended Complaint would not be dismissed even if Judge Wang agrees with Angi on that issue. That is, Spoon alleges the receipt of <u>both</u> phone calls <u>and</u> texts. Thus, a hypothetical (and unlikely) adoption of the minority view that text messages are not calls for purposes of the TCPA would not defeat Spoon's claims because she also alleges that Angi placed at least (3) actual phone calls to her in violation of the TCPA.

Second, and as to Angi's motion to strike the class allegations (relief that is rarely granted), while Angi nitpicks Plaintiff's pleaded class definitions, it fails to carry its heavy burden to establish that no class could ever be certified in this case and its Motion to Strike will very likely be denied. To the extent that, following discovery, Plaintiff or the Court determines that the pleaded class definitions need to be modified in some way, this can be easily accomplished and is common in class litigation. *See Ramos v. Banner Health*, 2019 U.S. Dist. LEXIS 40919, 2019 WL 646082, at *1 (D. Colo. 2019) ("A court has plenary power to modify the class definition . . . at any time prior to judgment, [and] the parties are free to move for modifications to the class definitions should subsequent events reveal that the class definition is unworkable.")

All told, Angi fails to carry its burden to establish that a stay is warranted. Accordingly, for the reasons set forth below, the motion should be denied and discovery should open immediately.

## II.    ARGUMENT

Stays of discovery pending motions to dismiss or to strike are not favored in this District. As this Court has explained:

> [T]he normal practice in this district is not to stay discovery pending decision a dispositive motion. *See Aspen Corporations, Inc. v. Gorman*, 18-cv-01325-CMA-

SKC, 2019 U.S. Dist. LEXIS 9207, 2019 WL 266313 (January 18, 2019) (denying stay of proceedings while motion to dismiss for [*4] lack of personal jurisdiction is pending, explaining that "stays are the exception in this judicial district, not the rule"); *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009) ("This District generally disfavors stays of discovery.").

As reflected in the vast majority of cases from this District, the general view is that, absent a unique circumstance such as a qualified immunity defense, a plaintiff's right to proceed expeditiously with its claims, even in the face of a potentially dispositive motion, should not be denied. *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt.*, 713 F.2d 1477, 1484 (10th Cir. 1983) ("The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir.1971)).

In assessing whether to grant a stay pending decision on a dispositive motion, judges of this District look to the so-called "*String Cheese*" factors, from a decision issued by Magistrate Judge Coan, *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 U.S. Dist. LEXIS 97388, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Any lawyer practicing regularly in this district should know of the disinclination to stay discovery pending a dispositive motion and should also be familiar with the *String Cheese* factors usually considered in assessing whether to stay discovery. Indeed, the *String Cheese* case has been cited more than 600 times in judicial decisions—remarkable for a magistrate judge's unpublished order.

The major reason that stays of discovery are disfavored is that dispositive motions (especially ones initially referred to a magistrate judge for a recommendation), usually take many months, and potentially up a year to ultimately decide. Delays in getting to trial are endemic in this District, in large part because the number of district judges is inadequate for the growing population of Colorado (the number having stayed the same since the 1970s), and also because the political process has delayed appointment of new judges for vacant positions. A substantial percentage of cases involve some kind of dispositive motion at the beginning, and a substantial number of those dispositive motions are then denied, at least in part. If every case involving a dispositive motion were to be stayed pending determination of the motion, then the already lengthy average time to trial in this District (estimated by my colleague Judge Hegarty to be more than 26 months) would likely approach or exceed three years. In light of this Court's docket and the delays endemic to getting a decision on a dispositive motion, three of the five *String Cheese* factors generally militate in favor of denying a stay. *See String Cheese*, 2006 U.S. Dist. LEXIS 97388, 2006 WL 894955 at * 2 (these three factors include the plaintiff's interests in proceeding expeditiously, the convenience of the court in effectively managing its docket, and the public interest in having our court system work smoothly and efficiently). So, as a general rule, the magistrate judges of this Court do not stay discovery pending consideration of a dispositive motion. Instead, we enter

scheduling orders with the full expectation that the parties will launch into discovery and move the case forward. This way, if (as happened in this case, as in most cases) the dispositive motion is denied in full or part, the case will nevertheless remain on schedule.

*Sebastian v. GreenLink Int'l, Inc.*, Case No. 20-cv-01788-RM-NRN, 2021 U.S. Dist. LEXIS 236572, at *3-6 (D. Colo. Dec. 10, 2021). This case does not feature any "unique circumstance" such as issues related to immunity or jurisdiction. Thus, the "general rule" should apply and discovery should not be stayed.

As this Court has also previously acknowledged, "some courts have also adopted a 'preliminary peek' approach in deciding whether to stay a case pending resolution of a dispositive motion" which "involves considering the potential merits of the dispositive motion and assessing whether the motion to dismiss is highly likely to be granted". *Warden v. Sulzer*, Case No. 22-cv-00271-WJM-NRN, 2022 U.S. Dist. LEXIS 85146, at *9-10 (D. Colo. May 11, 2022); *But see Estate of Thakuri by and through Thakuri v. City of Westminster*, Case No. 19-cv-02412-DDD-KLM, 2019 U.S. Dist. LEXIS 215693 (D. Colo. Dec. 12. 2019) (rejecting "preliminary peek" approach because it would "essentially require adjudication of the dispositive motion at the same time, thus negating the entire purpose of the motion to stay and inappropriately usurping the District Judge's authority to determine the merits of the Motion to Dismiss").

Though it is not required, should a "preliminary peek" be taken here, such a review would caution against staying the case pending resolution of Angi's motions. Taking the Motion to Dismiss first, the motion is entirely focused on the issue of whether text messages are actionable under the TCPA—there is no other supposed basis for dismissal raised. (*See* Dkt. 19.) While Angi states that "[i]n the wake of *McLaughlin*, eleven courts have applied the statute's plain text and structure to dismiss Section 227(c) claims based on text messages", it fails to point

to the at least twenty (20) other courts who have reached the opposite conclusion. [1] This includes courts finding specifically that Spoon's Caller ID claim applies to text messages. *See Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 574 (E.D. Pa. 2025) ("I conclude that a private cause of action exists [for Caller ID claims], [and that] the regulation covers text messages"). Indeed, as recently as October 8, 2025, Judge Sweeney found that the TCPA applies to text messages. *Connor v. Servicequick, Inc.*, Case No. 24-cv-00286-CNS-NRN, 2025 U.S. Dist. LEXIS 199578 (D. Colo. Oct. 8, 2025).

But perhaps most importantly for purposes of the motion to stay, even if the Court happened to agree with Angi that text messages are not actionable, such a conclusion would not result in dismissal of this case. As Angi itself recognizes, "Plaintiff alleges she received 'a series of calls' and a single text message from Angi between November 2025 and December 2025. . . Plaintiff alleges that Plaintiff received three calls from Angi from the same 214-833-1153 number on December 5, 2025, December 8, 2025, and December 10, 2025." (Dkt. 19 at 3.) But Angi then makes the, frankly, confusing statement that "Because Plaintiff's claims are based primarily on text messages, she cannot state [sic] claim under the TCPA's DNC provisions". (*Id.*) In other words, Angi on one hand correctly states that Plaintiff alleged the receipt of three calls and one text message, but on the other hand pretends that the Complaint only involves text messages. But again, Plaintiff *does* plead the receipt of actual phone calls, not just the single text message. It is simply not correct that Plaintiff's claims are "based primarily on text messages". The Court could deem the text message nonactionable, and Plaintiff's case would proceed

---

[1] Don't just take Plaintiff's word for it, Angi's Counsel runs a blog called "TCPAWorld" which has been posting periodic "scorecards" on this issue. As of its April 13, 2026 update, the tally was 10 courts adopting Angi's position, 20 rejecting it. *See* https://tcpaworld.com/2026/04/13/latest-sms-scoreboard-get-ready-for-law-conference-of-champions-with-the-complete-set-of-tcpa-dnc-sms-rulings-at-your-fingertips/ (last visited May 21, 2026).

5

anyway, because of the phone call allegations. Angi's Motion to Stay should be denied for this reason.

Next, Angi also contends that the case should be stayed pending resolution of its Motion to Strike Class Allegations. Courts very rarely strike class allegations in advance of a motion for class certification. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases) (striking class allegations "is in fact rare…in advance of a motion for class certification."). To prevail on its motion, Angi would need to establish that that "it is clear from the face of the complaint that no class can be certified." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (citation omitted). Indeed, the general rule is that "where defendants contend that certification is precluded as a matter of law before the filing of the certification motion, defendant bears the burden of demonstrating that on the face of the complaint, class certification is **impossible**." *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 613 (W.D. Wis. 2003) (quoting 2 Newburg & Conte, *Newburg on Class Actions*, § 7.22 (3d ed. 1992)) (emphasis added).

Angi's argument as to why the class allegations should be stricken is shifting. That is, in the Parties' Rule 26(f) Report and Proposed Scheduling Order, Angi takes the position that "it submits a class is not certifiable in this case as Angi's practice and procedure is to contact only consenting individuals and entity, and not random consumers. As such, Plaintiff's overly broad class definitions—which do not take consent into account—can never be certified". (*See* Dkt. 24 at 3.) But this argument is not actually raised in Angi's Motion to Strike. Instead, the Motion argues that: (1) "the DNC class is overly broad and lacks commonality because it is not limited to residential telephone subscribers" and; (2) "the DNC class is overly broad and lacks community because it is not limited to individuals who personally registered their phone

numbers on the DNC Registry". (Dkt. 20 at 2.) Arguments related to alleged prior express

consent are not raised in the motion.

Taking the arguments actually raised in the Motion to Strike first, nearly identical

arguments were raised in the case of *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052 (D.

Colo. 2023). As Judge Gallagher explained there:

> SolidQuote's concern is that the proposed "class definition asks this Court to improperly expand this case beyond the statutory scope" (D. 26 at 14) as a statutory violation requires a residential subscriber "[to have] registered his or her number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2). In contrast, Plaintiff's proposed class would include any person whose number "was registered," without regard to who did the registering (D. 8 at 9). This issue is easily remedied. The Court modifies subdivision (1) of the proposed class definition to instead state "the person's telephone number was registered by the person on the National Do-Not-Call Registry 30 or more days." Rather than strike the offending pleading and require amendment, I exercise my discretion to slightly amend the proposed definition—which is far more efficient and in keeping with the spirit of Federal Rule of Procedure 1 than another round of briefing on this issue (which would ultimately result in the same slight amendment). To be clear, this alteration will not prohibit dissemination of the proposed class information to all such qualifying numbers registered on the do-not-call list, but will require opt-in plaintiffs to certify they registered their own number(s).

*Klassen*, 702 F. Supp. 3d at 1059. Thus, even if the Court agrees with Angi's critiques of the

class definition in the Complaint, the proper remedy is to amend the definition, not strike the

class allegations. This is common in class litigation. *See Waterbury v. A1 Solar Power Inc.*, No.

15CV2374-MMA (WVG), 2016 WL 3166910, at *4 (S.D. Cal. June 7, 2016) ("most courts

decline to grant motions to strike class allegations prior to motions for class certification because

'the shape and form of a class action evolve[ ] only through the process of discovery.'");

*Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at

*6 (D. Ariz. Jan. 12, 2023) (same); *Krikorian v. Great-West Life & Annuity Ins. Co*. Case No.

16-cv-00094-REB-SKC, 2018 U.S. Dist. LEXIS 156263, at *9 (D. Colo. Sept. 13, 2018) (noting

"many cases [] hold that amendment and refinement of the definition of a Rule 23 class,

including after class certification, often is proper" and indicating that modifications to a class definition are particularly appropriate where the modification is "narrowing the scope of a class or adding greater detail to the definition of a class."[2]).

Next, as for the argument raised by Angi in the 26(f) Report that "Plaintiff's overly broad class definitions—which do not take consent into account—can never be certified", such a statement can only be made by ignoring the Amended Complaint. The pleaded class definition for the Do Not Call Registry Class specifically accounts for the fact that Angi may assert a consent defense and states:

> **National Do Not Call Registry Class**: All persons throughout the United States (1) to whom Angi delivered, or directed to be delivered, more than one phone call or text message within a 12 month period for purposes of encouraging the purchase of a product or service from Angi, (2) where the person's telephone number had been registered with the National Do Not Call Registry for at least thirty (30) days before Angi delivered or directed to be delivered at least two of the calls or text messages within the 12-month period, (3) from four-years prior to the filing of the initial complaint in this action through the date notice is disseminated to a certified class, and **(4) for whom Angi claims supposed prior express permission or invitation to place the calls and texts was obtained in the same manner as Angi claims supposed prior express permission or invitation was obtained from the named plaintiff, and/or where the number was reassigned and Angi claims prior express permission or invitation from the prior subscriber.**

(Am. Compl. ¶ 34.) Finally, much of Angi's arguments both in the 26(f) Report and in its Motion to Strike are seemingly focused on the Do Not Call Registry Class and ignore the fact that Spoon also alleges a separate claim on behalf of a Caller ID Class—a claim which, notably, consent is not a defense to.

## III. CONCLUSION

---

[2] This would be precisely the case with any amendment here to restrict, as Angi argues is necessary, the class to only residential subscribers and/or to those who personally placed their numbers of the DNC Registry. Such amendments would narrow, not expand the classes.

For all of these reasons, Angi's motion to stay should be denied. The District of Colorado views stays of discovery with disfavor and neither the motion to dismiss nor the motion to strike the class allegations are likely to be dispositive in this case. As such, the Court should deny Defendant's motion to stay and order such additional relief as it may deem necessary and just.

Dated: May 22, 2026

CATHERINE SPOON, individually and on behalf of all others similarly situated,

By: */s/ Patrick H. Peluso*
*One of Plaintiff's attorneys*

**PELUSO LAW LLC**
Patrick H. Peluso
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
E-Mail: ppeluso@pelusolawfirm.com

*Counsel for Plaintiff and the Alleged Class*

9

Case No. 1:26-cv-00523-NYW-NRN    Document 25    filed 05/22/26    USDC Colorado
pg 10 of 10

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was
served upon counsel of record by filing such papers via the Court's ECF system on May 22,
2026.

*/s/ Patrick H. Peluso*