**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00523-NYW-NRN

CATHERINE SPOON, on behalf of herself and all others similarly situated,

        Plaintiff,

v.

ANGI, INC., a Delaware corporation,

        Defendant.

---

**RESPONSE IN OPPOSITION TO MAY 7, 2026 MOTION TO DISMISS (DKT. 19)**

---

## I.      INTRODUCTION

Defendant Angi, Inc.'s Motion to Dismiss Plaintiff Catherine Spoon's First Amended Complaint asserting violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA" or "Act") is best understood as a *partial* motion to dismiss. Though Angi claims that "Plaintiff's entire FAC is predicated on her receipt of a text message in violation of Section 227(c)", that "she alleges two different types of Section 227(c) violations, [but] they are both based on the receipt of a text message—not calls", and that her claims are "based primarily on the receipt of a text message" (dkt. 19 at 1, 9), this is not remotely true. As Magistrate Judge Neureiter understood when denying Angi's Motion to Stay Discovery, notwithstanding Angi's request that the Complaint be dismissed "in its entirety," this motion to dismiss would not dispose of the case even if it were granted because Plaintiff alleges the receipt of <u>both</u> phone calls <u>and</u> a text, so a ruling that texts are not actionable would have no impact on Plaintiff's allegations regarding traditional phone calls. (*See* Am. Compl. ¶¶ 20-25.) Angi's repeated contentions to the

1

contrary are, frankly, confusing and can only be made by not actually reading the Complaint.

At any rate, Angi's (partial) motion to dismiss should be denied. As explained below, Angi argues for the adoption of the minority view—most courts faced with the arguments raised by Angi have rejected them and held that text messages remain within the purview of the TCPA even after *Loper Bright* and *McLaughlin*. This Court should join the majority and deny Angi's motion.

## II.    ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual matter, that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). When analyzing a 12(b)(6) motion, "all well-pleaded factual allegations . . . are accepted as true and viewed in the light most favorable to the nonmoving party." *Hoskins v. Gonnell*, No. 13-CV-02719-WYD-CBS, 2014 WL 1151905, at *2 (D. Colo. Mar. 21, 2014). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Hoskins*, 2014 WL 1151905, at *2. The standard under Rule 12(b)(6) is "a liberal pleading standard, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Moody v. MicroPort Orthopedics, Inc.*, 2022 WL 10032167, at *1 (D. Colo. Oct. 17, 2022) (quoting *Dias v. City & Cty. of Denver*, 567 F.3d 1169 (10th Cir. 2009)).

As explained below, the Court should deny Angi's Motion to Dismiss. The motion is entirely focused on the issue of whether text messages are actionable under the TCPA—no other supposed basis for dismissal is raised. (*See* Dkt. 19.) While Angi states that "[i]n the wake of *McLaughlin*, eleven courts have applied the statute's plain text and structure to dismiss Section 227(c) claims based on text messages", it fails to point to the over thirty (30) other courts who

have reached the opposite conclusion. This includes courts finding specifically that Spoon's Caller ID claim applies to text messages. *See Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 574 (E.D. Pa. 2025) ("I conclude that a private cause of action exists [for Caller ID claims], [and that] the regulation covers text messages"). Indeed, as recently as this past Fall (after *McLaughlin*), Judge Sweeney found that the TCPA applies to text messages. *Connor v. Servicequick, Inc.*, Case No. 24-cv-00286-CNS-NRN, 2025 U.S. Dist. LEXIS 199578 (D. Colo. Oct. 8, 2025). One court even found that Angi's arguments are "without support" and "cannot be argued in good faith". *Wilson v. Skopos Fin., LLC*, Case No. 25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *13 (D. Or. July 21, 2025). The Court should reject Angi's efforts to gut the TCPA's important consumer protections and deny the motion to dismiss.

## A.    Text messages have been actionable under the TCPA since at least 2009.

Angi's entire motion to dismiss is premised on the meritless argument that text messages are not "calls" under Section 227(c) of the TCPA. The problem for Angi is that "the FCC has issued regulations and guidance confirming that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5)." *Hudson v. Palm Beach Tan, Inc.*, Case No. 23-cv-486, 2024 U.S. Dist. LEXIS 165676, at *17 (M.D.N.C. Aug. 12, 2024). As the *Hudson* court explained, "[e]ffective March 26, 2024, the FCC amended [the regulation] to confirm that the regulations apply to text messages sent to wireless telephone numbers, and the regulation now provides that: '[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'." *Id.*

3

Additionally, and though this amendment was not enacted until March 26, 2024, the FCC broke no new ground in codifying the rule that text messages are calls. The FCC explained its amendment by stating that "[t]he Commission adopts the proposal to codify the National Do Not Call Registry's existing protections to text messages. . . **The Commission's action is consistent with Federal court opinions**". Targeting and Eliminating Unlawful Text Messages, 89 Fed. Reg. at 5099. (emphasis added.)

Indeed, courts for more than a decade have consistently held that text messages are calls under the TCPA. *See, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].");  *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 955 (9th Cir. 2009) ("a text message is a 'call' within the meaning of the TCPA"); *Georgopulous v. PPM Capital, Inc*., 19-cv-00347-DDD-STV, 2019 U.S. Dist. LEXIS 198583 at*24 n.6 (D. Colo. Oct. 21, 2019) ("A text message to a cell phone also constitutes a call" under the TCPA);  *Krady v. Eleven Salon Spa*, Case No. 16-cv-5999, 2017 U.S. Dist. LEXIS 120139 (E.D.N.Y. July 28, 2017) (providing authority finding that text message is a "call" under the TCPA); *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983, 986 (9th Cir. 2023) ("We now hold that the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has suffered an injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA."); *Mattson v. Quicken Loans, Inc*., 2018 U.S. Dist. LEXIS 85883, at *7 (D. Or. May 22, 2018) ("Under the TCPA, a text message is a 'call'."); *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914 at *6 (W.D.N.C. Nov. 12, 2020) ("Reading together other courts' interpretations of the TCPA and extending relevant Fourth Circuit precedent related to receipt of calls under the TCPA, the Court finds Plaintiff's receipt of

4

Defendant's two unsolicited text messages . . . are the kind of harm the TCPA protects against"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) ("[S]everal persuasive decisions conclude that Section 227(c)(5) confers a claim on a person receiving more than one voice call or text message."); *Scanlon v. Manscaped, LLC*, 2020 U.S. Dist. LEXIS 265925, at *6 (D. Mass. Dec. 14, 2020) ("It is undisputed that the prohibition against 'calls' under the TCPA includes text messages."); *see also* In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are.").[1]

Thus, the FCC, the United States Supreme Court, and appellate and district courts throughout the country (including in Colorado) have all held that text messages are "calls" under the TCPA. Yet to hear Angi tell it, the Supreme Court's holdings in *McLaughlin* and *Loper Bright* warrant an about-face. As explained below, this is incorrect.

**B.      *McLaughlin* and *Loper Bright* do not warrant a change to the long-standing conclusion that text messages fall within the purview of the TCPA**

The gravamen of Angi's position is that the long-held treatment by courts throughout the country of "text messages as actionable under the TCPA" was "shattered" by *McLaughlin* and *Loper Bright*. (Dkt. 19 at 2.) But these Supreme Court decisions warrant no such conclusion.

First, the Supreme Court in *Loper Bright* stated that its holding "does not call into question prior cases that relied on the *Chevron* framework . . .[t]he holdings of those cases that

---

[1] *See also Bradshaw v. CHW Group, Inc.*, 763 F. Supp. 3d 641 n.5 (D.N.J. 2025) ("Text messages are considered 'calls' for [§ 227(c)(5)] purposes."); *Champion v. Credit Pros Int'l Corp.*, No. 21-10814, 2023 U.S. Dist. LEXIS 84427 (D.N..J. May 15, 2023) (denying motion to dismiss § 227(c)(5) claim based on receipt of text messages); *Zelma v. Penn LLC*, No. 19-8725, 2020 U.S. Dist. LEXIS 9615 at *6-7 (D.N.J. Jan. 17, 2020) (assuming that sending text messages to number on DNC registry was claim under § 227(c)(5)); *Caplan v. Budget Van Lines*, 2020 U.S. Dist. LEXIS 136865, at *7 (D. Nev. July 31, 2020); *Davis v. D.R. Horton, Inc.* 2020 U.S. Dist. LEXIS 44977, at *2 (D. Del. Mar. 16, 2020) ("the case law confirms that text message are calls" under the TCPA).

specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." 603 U.S. at 412. Importantly, and once again, the Supreme Court has already held that text messages are calls under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].") That holding fits squarely into the *Loper Bright* holding regarding *stare decisis* in a post-*Chevron* world.

Additionally, as one court recently observed in a TCPA case, "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, 2025 U.S. Dist. LEXIS 35547, at *3 (W.D. Tex. Feb. 27, 2025). Relying on the FCC's expertise is appropriate even after *McLaughlin* and *Loper Bright*. Indeed, the Supreme Court held that "although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." *Loper Bright*, 144 S. Ct. at 2267 (citations and quotations omitted); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

This is particularly true with the TCPA, where "Congress expressly conferred discretionary authority on the FCC to flesh out the TCPA". *Lyman v. Quinstreet, Inc.*, 2024 U.S. Dist. LEXIS 123132, at *11 (N.D. Cal. July 12, 2024) (citing 47 U.S.C. § 227(c)); *Lirones v. Leaf Home Water Sols., LLC*, 2024 U.S. Dist. LEXIS 165900 at *18 (N.D. Ohio Sept. 16, 2024 (same). As in *Lyman*, the Court can "accord[] due respect to the FCC's interpretation" and understand that it "need[] only 'independently identify and respect such delegation[] of

6

authority, police the outer statutory boundaries of [that delegation], and ensure that [the agency exercises its] discretion consistent with the APA.". *Id.* (citing *Loper Bright*.) The *Lyman* court concluded that the FCC's interpretation of the TCPA "is 'especially informative' and particularly persuasive. . .[i]n any event, however, the Court would reach the same conclusion in the absence of any FCC interpretation of the TCPA's statutory text." *See also Mujahid v. Newity, LLC*, 25-cv-8012, 2025 U.S. Dist. LEXIS 221088, at *6-7 (N.D. Ill. Nov. 10, 2025) (citing *McLaughlin* and finding that "interpreting § 227(c) to include text messages is consistent with guidance from the FCC . . . [and] is consistent with numerous decisions by other district courts on this issue . . . In sum, nothing in the text, structure, or purpose of the TCPA suggests a distinction between an unsolicited voice call and an unsolicited written text message. The Court concludes that a 'telephone call' as used in § 227(c) encompasses the types of text messages received by Plaintiff.") This Court should follow suit.

Moreover, holding that text messages are not calls under the TCPA would fly in the face of not just precedent, but the very purpose of the TCPA itself. As, "[t]he role of the courts in interpreting a statute is to give effect to Congress's intent," the Court should reject Angi's efforts to upend the TCPA. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). Congress did not intend for its law regulating telemarketing to be powerless to stop telemarketers using a newer technology (text messages) to hound consumers. As the *Lyman* court explained, Congress's purpose in enacting Section 227(c) was "to protect residential telephone subscribers' privacy rights to avoid telephone solicitations to which they object." *Lyman*, 2024 U.S. Dist. LEXIS 123132, at *10. Those privacy interests do not depend on whether the telephone solicitation is a voice call or a text message call. *See Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020) (Barrett, J.) ("The undesired buzzing of a cell phone from a text message,

like the unwanted ringing of a phone from a call, is an intrusion into peace and quiet in a realm that is private and personal. This is the very harm that Congress addressed.")

### C.     The Overwhelming Weight of Authority is on Plaintiff's Side

Finally, though Angi cites to several cases where courts have recently bought the argument that text messages are outside the scope of the TCPA, many more courts after *McLaughlin* have rejected this premise entirely.

Indeed, an overwhelming number of courts have rejected Angi's position and the weight of authority is squarely on Plaintiff's side. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123-24 (9th Cir. 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA."); *Wilson v. Easy Spirit, LLC*, 25-cv-112 (SFR), 2026 U.S. Dist. LEXIS 69059 (D. Conn. Mar. 31, 2026) ("I . . . find that a text message is a 'telephone call' for the purpose of the private right of action under § 227(c)(5)."); *Rubin v. Staples, Inc.*, Case No. 25-cv-45515, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026) ("the Court concludes that 'telephone call' can encompass text messages for purposes of § 227(c)(5) and 47 C.F.R. § 64.1200(d)"); *Zelma v. Wonder Grp. Inc.*, Case No. 25-cv-3232, 2026 U.S. Dist. LEXIS 112225, at *7 (D.N.J. May 20, 2026) ("The TCPA applies to both voice calls and text messages."); *Newell v. Child.'s Dental Health Assocs., LLC*, 25-cv-5238, 2026 U.S. Dist. LEXIS 74360 (E.D. Pa. Apr. 6, 2026) ("A commonsense interpretation of the statutory text and purpose of the TCPA shows that texts should be considered calls"); *Callier v. United Fundings Ltd. Liab. Co.*, 24-cv-00363-LS-MAT, 2026 U.S. Dist. LEXIS 83725, at *20 (W.D. Tex. Apr. 15, 2026) ("Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5)."); *Rabbitt v. Rohrman Midwest Motors, Inc.*, Case No. 25-cv-11312, 2026 U.S. Dist. LEXIS 66266, at *5 (N.D. Ill. Mar. 27, 2026) (text messages are calls); *Mey v. Liberty Home Guard, LLC*, No. 23-cv-281,

2026 U.S. Dist. LEXIS 739, at *20 (N.D.W. Va. Jan. 5, 2026) ("[A]greater number of federal

courts have come to the opposition conclusion [as Angi] . . . This Court agrees that a text message

is a call within the ambit of the TCPA."); *Barton v. Delfgauw*, 21-cv-05610-DGE, 2025 U.S. Dist.

LEXIS 159809, at *7 n.1 (W.D. Wash. Aug. 18, 2025) (text messages are calls under the TCPA);

*Sundstrom v. Ocean Reef Media, LLC*, 26-cv-05036-DGE, 2026 U.S. Dist. LEXIS 108225, at *9

n.2 (W.D. Wash. May 15, 2026) ("text messages remain actionable under § 227(c)(5)."); *Taha v.*

*Momentive Software, Inc.*, 25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *8-9 (C.D.

Cal. Mar. 11, 2026) (text messages are calls for purposes of § 227(c)(5).); *Soale v. eXP Realty*

*LLC*, No. 25-cv-773-PHX-GMS, 2026 U.S. Dist. LEXIS 47597, at *8-9 (D. Ariz. Mar. 9, 2026)

(citing 47 U.S.C. § 227(c)(5) and stating "to be directly liable under the TCPA, a defendant must

call or text a consumer or cause a consumer to be called or texted."); *Hudson*, 2024 U.S. Dist.

LEXIS 165676 (M.D.N.C. Aug. 12, 2024) ("The Court also notes that the Supreme Court has

assumed, and other Circuit courts and district courts in this Circuit have held, that the term 'call'

does include text messages . . . If a text message is a 'call' under the statutory language in

subsection (b)(1)(A)—which places restrictions on making 'any call' using an automatic telephone

dialing system to certain lines, without separately specifying that it includes text messages—then

there is no reason to assume that a text message could not be a call under subsection (c) (5)");

*Kattato v. Cross Country Healthcare, Inc.*, Case No. 23-cv-00485, 2026 U.S. Dist. LEXIS 36368,

at *24 (W.D. Va. Feb. 23, 2026) (granting discovery motion to compel and stating "[t]he dates

when the alleged text messages were sent is . . . relevant to Count II, which is the 47 U.S.C.

§ 227(c)(5) claim"); *Watkins v. EyeBuyDirect, Inc.*, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex.

Aug. 28, 2025); *Bosley v. A Bradley Hosp. LLC*, 2025 U.S. Dist. LEXIS 183986 (S.D. Fla. Sept.

19, 2025); *Wilson v. MEDVIDI Inc.*, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025);

*Mujahid v. Newity, LLC*, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025); *Piet v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 230981 (S.D. Fla. Nov. 24, 2025); *Glasel v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 231053 (S.D. Fla. Nov. 25, 2025); *McGonigle v. Office Depot, LLC*, 2025 U.S. Dist. LEXIS 231061 (S.D. Fla. Nov. 25, 2025); *Esquivel v. Mona Lee, Inc.*, 2025 U.S. Dist. LEXIS 230841 (S.D. Cal. Nov. 24, 2025); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-CV-05093-JLS-BFM,  2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 3, 2025); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025); *Duron v. Kings Capital Holding LLC*, 2026 LX 68851 (W.D. Tex. Jan. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026); *Hernandez v. Bedford Dental L.L.C.*, 2026 U.S. Dist. LEXIS 23208 (N.D. Ill. Feb. 4, 2026); *McGonigle v. Shopperschoice.Com, LLC*, 2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026); *Cole v. C/T Install America, LLC*, (E.D. PA Mar. 23, 2026); *Connor v. Servicequick, Inc.*, Case No. 24-cv-00286-CNS-NRN, 2025 U.S. Dist. LEXIS 199578 (D. Colo. Oct. 8, 2025); *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, at *13 (D. Or. July 21, 2025).

The Court should join the clear majority and hold that text messages are actionable under Section 227(c)(5).

## D.    Angi's "Textual" Argument Fails to Read the Statute in Context

As a final point, Angi's position is based on the idea that "the plain text of the TCPA" forecloses causes of action based on text messages. (*See* Dkt. 19 at 5.) However, Angi's conclusion can only be reached by reading the statute with blinders on. Judge Gettleman of the Northern District of Illinois addressed this issue head-on and explained why a textualist position fails:

> As the court understands it, defendant's position is that no matter what regulations the FCC promulgates under its § 227(c)(1) authority, the private right of action in § 227(c)(5) applies only to "telephone call[s]." Although this argument has a literalist textual appeal, the court finds that § 227(c)(5) must be read in the context

of the referenced "regulations" that are mandated by § 227(c)(1). See Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) (explaining that "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (internal quotation omitted)).

The implication of defendant's position is that when Congress created a private right of action tied to violations of the "regulations" promulgated under §227(c)(1), it intended the private right of action to extend only to regulations concerning "telephone call[s]," which constitute a subset of the larger set of "telephone solicitations" that Congress mandated the FCC to regulate under § 227(c)(1). But defendant offers no explanation as to why this would be the case. Of course, as defendant correctly notes, text messaging did not exist as a technology in 1991. But this technological backdrop makes defendant's reading of the statute more confusing, because it implies a Congressional intent to distinguish "telephone call[s]" (voice calls only) from "telephone solicitations" (a category including texts) in 1991, when there was no difference between these concepts. Defendant has not provided a rationale explaining why Congress would make such a distinction or provided any legislative history supporting the proposition that Congress did make this distinction.

The better reading of § 227(c)(5) recognizes that it is part of a statutory scheme that provides a private right of action to individuals who are the victims of multiple violations of the regulations promulgated by the FCC under §227(c)(1) within a 12-month period. See Gustafson v. Alloyd Co., 513 U.S. 561, 569, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) (explaining that a statute should "be interpreted as a symmetrical and coherent regulatory scheme"). Congress directed the FCC to develop these regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). The FCC did so, promulgating numerous regulations including C.F.R. § 64.1200(e), which specifically applies C.F.R. § 64.1200(c) and (d) to text messages. When interpreting a statute, the court is tasked with acting as the faithful agent of Congress. See generally Henry M. Hart, Jr. & Albert M. Sacks, The Legal Process: Basic Problems in the Making and Application of Law, 126 Yale L.J. 438, 475 (2016) (observing that the "'faithful agent' model is [*8] the guiding paradigm of many mainstream statutory interpretation theories and doctrine"). Despite its literalist textual appeal, the court cannot accept defendant's reading of §227(c)(1) because it would undercut Congress's otherwise coherent regulatory scheme for a reason that neither defendant nor this court can articulate. Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages,

There is an additional reason to reject defendant's reading of §227(c)(5): statutory stare decisis. The term "telephone call" appears many times throughout §227. In 2009, the Ninth Circuit held "that a text message is a 'call' within the meaning of

the TCPA." <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 952 (9th Cir. 2009). Relying on that line of precedent, the Supreme Court later stated in dicta that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of §227(b)." <u>Campbell-Ewald Co. v. Gomez</u>, 577 U.S. 153, 157, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016). <u>Satterfield</u> was decided using a <u>Chevron</u> analysis. 569 F.3d at 952. Although <u>Loper Bright</u> overruled <u>Chevron</u>, the <u>Loper Bright</u> Court held that its decision does not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are <u>still subject to statutory stare decisis</u> despite [\*9] our change in interpretive methodology." <u>Loper Bright</u>, 603 U.S. at 412 (emphasis added). Thus, past determinations, such as <u>Satterfield</u>, that a text message is a call for the purposes of the TCPA are still subject to statutory stare decisis. <u>See Hernandez v. Beford Dental, L.L.C.</u>, No. 25 CV 6787 at 2 (N.D. Ill. Feb. 4, 2026) (declining "to hold that the TCPA does not apply to text messages" because of statutory stare decisis).

Finally, the court is not persuaded by defendant's argument that "Congress also reaffirmed that Section 227(c) only relates to telephone calls, not text messages, because it has twice amended other provisions of the TCPA to explicitly reference text messages but chose not to amend 227(c) for those purposes." Defendant correctly observes that Congress most recently amended the TCPA in 2018. The regulatory history and case law discussed above occurred prior to 2018. Thus, in 2018 it would have been known to Congress that the courts and the FCC were both consistently interpreting § 227(c) to include text messages.

That Congress did not change anything about §227(c) in the 2018 amendments can be read to represent exactly the opposite of what defendant advocates. In light of the regulatory history and case law that was known to Congress in 2018, Congress had the option to take affirmative action to exclude text messages from § 227(c)'s coverage. Congress did not do so. If Congress's inaction in 2018 is to be ascribed any meaning, the court interprets it as an acceptance of the existing case law and regulations that applied §227(c) to text messages. This read on Congress's inaction is in harmony with the oft-repeated principle that statutory stare decisis is particularly strong, because Congress can change what the courts have concluded.

*Rabbtit*, 2026 U.S. Dist. LEXIS 66266, at \*5-10 (N.D. Ill. Mar. 27, 2026). Thus, to the extent the Court may be initially persuaded by Angi's "plain text" argument, a closer look reveals that a textual position unravels under scrutiny. *See also Alvarez*, 2026 U.S. Dist. LEXIS 14155, at \*9-10 (reviewing 1990 dictionary definition of "call" to determine in the affirmative that "the concept of a 'text message' is fairly embraced by the meaning of 'telephone call' in 1991" when the TCPA was enacted).

12

## III.  CONCLUSION

For all of these reasons, the Court should join the majority of courts holding that text message remain actionable under the TCPA, deny Angi's Motion to Dismiss, and grant such additional relief as it may deem necessary and just.

Dated: May 28, 2026

**CATHERINE SPOON**, individually and on behalf of all others similarly situated,

By: */s/ Patrick H. Peluso*
*One of Plaintiff's attorneys*

**PELUSO LAW LLC**
Patrick H. Peluso
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
E-Mail: ppeluso@pelusolawfirm.com

*Counsel for Plaintiff and the Alleged Class*

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on May 28, 2026.

*/s/ Patrick H. Peluso*

**CERTIFICATE RE ARTIFICIAL INTELLIGENCE**

The undersigned counsel certifies that generative artificial intelligence was <u>not</u> used to draft this brief.

*/s/ Patrick H. Peluso*

14