# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-01577-DDD-NRN

KIMBERLY SEGURA, ON BEHALF OF HERSELF AND ALL OTH-ERS SIMILARLY SITUATION,

    Plaintiff,

v.

AVENUE5 RESIDENTIAL, LLC, A DELAWARE LIMITED LIABIL-ITY COMPANY,

    Defendant.

---

## ORDER DENYING MOTION TO DISMISS

---

Plaintiff in this putative class action has alleged that Defendant illegally, and in violation of the terms of their contract, charged her for "junk fees" that she never agreed to pay. Defendant has moved to dismiss. Other than to the extent Plaintiff waived the right to pursue any class action under the terms of her first lease, the motion is denied.

## BACKGROUND

Plaintiff Kimberley Segura lived in apartment buildings owned by Defendant Avenue5 between May 7, 2021, and August 6, 2023. Dkt 4. at 26, 103. Her first lease spanned May 7, 2021 to August 6, 2022. *Id.* at 26. It included a waiver of her right to pursue a class action for claims arising under the lease. *Id.* at 95. Plaintiff's second lease spanned from August 7, 2022 to August 6, 2023. *Id.* at 103. It did not contain a class action waiver. Dkt. 19 at 6.

- 1 -

The crux of Ms. Segura's complaint is that "powerful and deep-pock-eted corporations" like Defendant "have sought to grow their profits by packing their contracts with hidden and misleading charges—known as 'junk fees'—that increase the costs of daily life for working people." Dkt. 4 at ¶ 2. She alleges that the "Challenged Fees are hidden from tenants, never meaningfully disclosed as part of the advertised rent. Though not included in the advertised rent, these junk fees are part of the real 'rent' tenants must pay—that is, part of the mandatory, monthly cost to stay in an Avenue5 apartment." *Id*. at ¶ 10. These include "Pest Control Fees and Valet Trash Fees," which Ms. Segura claims "defy public policy by improperly shifting Avenue5's cost of complying with the warranty of habitability onto its tenants and, in the case of the Valet Trash Fees, charging for a service proscribed by the International Fire Code broadly adopted in the jurisdictions in Colorado where Avenue5 operates." *Id*. at ¶ 12. She also alleges that Avenue5 has a "practice of charging and col-lecting fees that were not agreed to in the lease agreements" including "double bill[ing] Plaintiff and the class members for trash services—once for a flat fee service and again based on a per occupancy formula—and also charg[ing] Plaintiff and the class members a 'Territorial Fee'" that was not included in the lease agreement. *Id*. at ¶ 13. "[W]hen tenants fall behind on rental payments," Ms. Segura alleges that "Avenue5 charges late fees that exceed the amounts agreed to in its lease agree-ments." *Id*. at ¶ 14. She alleges that the Pest Control Fee is "typically $3–$5 per month," the Valet Trash Fees are "typically $25 per month" and assessed "in addition to a mandatory $10 Trash service fee already paid by tenants," and the Territorial Fees are "typically $33.23 per month." *Id*. at ¶¶ 31–33. She further states that "the Challenged Fees are not disclosed until *after* the tenants have already spent hundreds of dollars (or more) on non-refundable fees to apply for and secure the unit and other sunk costs like moving expenses." *Id*. at ¶ 39.

Based on these allegations, Ms. Segura filed this putative class action claims in state court alleging claims under five causes of action: 1) violation of the Colorado Consumer Protection Act; 2) breach of contract; 3) Violation of C.R.S. § 38-12-105 *et seq.*, which governs the payment of fees for late rent payments; 4) unjust enrichment; and 5) declaratory judgment. *Id.* at ¶¶ 104–177. Defendant subsequently removed the case to this court and has now moved to dismiss. Dkt. 1; 10.

## APPLICABLE LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) requires a court to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* At this stage, the well-pleaded facts underlying a plaintiff's allegations must

articulate a viable legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.  Class Action Waiver

Avenue5 is correct that the class action waiver in Plaintiff's first lease is enforceable. It is true, as Ms. Segura argues, that "Colorado has adopted a policy of favoring the maintenance of class actions." *Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011) (quotation marks omitted).[1] But there is a wide gulf between that general policy and the proposition that a voluntary waiver of the right to bring a class action is unenforceable. To the contrary, as a general matter, Colorado "recognize[s] a strong policy of freedom of contract." *Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) (collecting cases). And as Defendant notes, "Colorado courts have consistently held that 'in general, statutory rights may be waived if the waiver is voluntary.'" *McCracken v. Progressive Direct. Ins. Co.*, 896 F.3d 1166, 1174 (10th Cir. 2018) (quoting *People ex rel. N.G.*, 303 P.3d 1207, 1218 (Colo. App. 2012)).

Ms. Segura does not here assert that she was duped into signing the class waiver or here that it was added to her lease after she had already manifested assent to other terms. She simply argues that it is "void on public policy grounds as its enforcement would prevent Segura and other tenants from obtaining relief." Dkt. 19 at 6. But that argument does not account for the fact that waiver of certain rights is often an essential prerequisite for the formation of a contractual agreements, and that many agreements would not be made if provisions prohibiting one

---

[1]  Colorado substantive law and the Federal Rules of Civil Procedure apply in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); 28 U.S.C. § 1332.

"from obtaining relief" were unenforceable. It also does not account for the fact that contractual arrangements premised on the waiver of rights are frequently enforced by the state of Colorado. *First Interstate Bank of Denver, N.A. v. Central Bank & Trust Co. of Denver*, 937 P.2d 855, 861 (Colo. App. 1996) ("In general, both substantive and procedural statutory rights may be waived so long as the waiver is voluntary.").

Though the Colorado legislature has determined that class action waivers in residential leases are unlawful starting in August 2023, the lease in question here was signed in 2021. Dkt. 19 at 7. And even if that determination is indicative of "Colorado's clear public policy in favor of maintaining class actions in cases like this one," Ms. Segura does not explain why a limitation explicitly set to go into effect in 2023 should retroactively apply to deprive one party of the benefit that it fairly bargained for in 2021. C.R.S. § 38-12-801(3)(a)(III)(B). Accordingly, to the extent her claims depend on conduct during the first lease, they cannot be the basis of the class action.

Avenue5's bald assertion that the waiver persisted the termination of the first lease and should be applied despite the lack of any such waiver in the second lease, not to mention the 2023 law, is untenable, however. Any class claims premised on the first lease must be dismissed, but Ms. Segura may still bring class action claims to the extent they are premised on alleged wrongdoing that took place under the auspices of her second lease.[2]

---

[2]   Defendant did not address whether any particular claims might be affected if the class-action waiver applied to the first, but not the second lease, so the specifics of that question may have to be addressed at a later time.

- 5 -

## II.   Colorado Consumer Protection Act Claim

Ms. Segura has stated a viable claim under the Colorado Consumer Protection Act. While the evidence may eventually show that Avenue5's conduct has not in fact had the public impact that she has alleged or that its actions were not in fact deceptive, the allegations in the complaint are sufficient to move forward at this stage of the litigation.

### A.  Public Impact

Ms. Segura has alleged at least an arguable public impact stemming from Defendant's alleged misconduct. *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003) (stating that the CCPA requires a plaintiff to prove that "the challenged conduct has a significant public impact"); Dkt. 4 at ¶ 113 ("The number of Colorado consumers who paid these deceptive and unfair fees is certainly in the hundreds of thousands—and may be in the millions."). Though Avenue5 is correct that a "breach of contract claim, without additional conduct, cannot constitute an actionable claim under the CCPA," the claim here is based on additional conduct: the allegedly deceptive precontractual behavior of misleading potential lessees into thinking that their rent payments would be lower than they actually were. Dkt. 10 at 8 (quoting *Rhino Linings*, 62 P.3d at 148). Given Plaintiff's allegation that Defendant's alleged deceptions may have reached thousands of Colorado consumers, she has carried her burden to plead significant public impact and it would not be appropriate to dismiss her claim without further development of the factual record.

### B.  Unfair or Deceptive Trade Practice

Ms. Segura has also plausibly alleged that Avenue5 has engaged in a "deceptive trade practice" as that phrase is used in the CCPA. *See Rhino Linings*, 62 P.3d at 147 ("A misrepresentation, which is a false or

misleading statement that induces the recipient to act or refrain from acting, is actionable when it is made either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead or deceive the plaintiff.") (quotation marks omitted). She states, for example, that

> Defendant's standard "Welcome Home" letters, which it provides to tenants and applicants upon their application for a rental unit do not disclose the Challenged Fees except for the Pest Control Fee. Rather, tenants are not informed of all of the Challenged Fees until they are presented with the Form Lease, which is well after they have already expended considerable amounts to initiate the rental process, including non-refundable application fees, administrative fees, security deposits, pet deposits, and at least the first month's rent.

Dkt. 4 at ¶ 40. That is sufficient to satisfy her burden to plead an unfair or deceptive trade practice at this stage of litigation.

Avenue5 argues that Ms. Segura has not met her burden because "C.R.S. § 38-12-501 *et seq.*, does not explicitly prohibit landlords from imposing fees for pest control and/or trash services." Dkt. 10 at 10. But whether a different statute governing habitability standards explicitly prohibits the challenged fees does not determine whether Ms. Segura has alleged a deceptive trade practice under the CCPA. And Ms. Segura has not simply alleged that the fees are deceptive and unfair because they violate habitability laws; she has alleged that "the Challenged Fees are not disclosed until *after* the tenants have already spent hundreds of dollars (or more) on non-refundable fees to apply for and secure the unit." Dkt. 4 at ¶ 39. This allegation, if proven, shows that Avenue5 advertised its apartments with an intent not to sell them as advertised and failed to disclose material information with the intent to induce a transaction. Time and discovery will tell whether this allegation is supported

- 7 -

by the facts, but at this stage, it is enough for Plaintiff's CCPA claim to move forward.

### C. Heightened Pleading Standard Under Rule 9(b)

I need not decide whether a plaintiff must plead a CCPA claim with particularity under Fed. R. Civ. P. 9(b) in these circumstances, because regardless of whether or not that heightened standard applies, Plaintiff's allegations are sufficient.

The Tenth Circuit has instructed that "Rule 9(b) requires only the identification of the circumstances constituting fraud, and [] does not require any particularity in connection with an averment of intent, knowledge or condition of mind." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). "Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Id.* (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). The complaint here alleges that Defendant falsely represented the price of rent prior to her signing the lease, causing her to incur "non-refundable fess to apply for and secure the unit and other sunk costs like moving expenses."[3] Dkt. 4 at ¶ 39. That satisfies all of the requirements of Rule 9(b), so even if that rule applies to this claim, it would still not render the complaint inadequate as Defendant suggests. To the extent Defendant's motion seeks dismissal of Plaintiff's CCPA claim, the motion is therefore denied.

---

[3] It may be true, as Defendant suggests, that it is a "fiction that the typical tenant arrives at their new apartment with a moving truck and all their worldly belongings ready to move in before they sign the lease." Dkt. 23 at 8. But that factual dispute does not warrant dismissal under Rule 12(b)(6) or impact Plaintiff's allegation that Defendant's alleged misconduct led to the payment of non-refundable lease application fees.

### III.   Breach of Contract Claims

Ms. Segura's breach of contract claims are also viable. Contrary to Avenue5's argument, the fact that the lease contained a provision that "the landlord would not pay any utilities" does not foreclose these claims. Dkt. 10 at 13. That is in part because it is not clear that the disputed fees—a "territorial fee" and a "flat trash fee"—are "utilities" as that term is used in the lease. *See* Dkt. 4 at ¶ 127 ("The Unauthorized Fees are not part of the agreed-upon utility costs that were imposed by the form lease agreements."). It is also because Ms. Segura alleges that defendant double-billed for a "per occupancy trash fee" and a "flat trash fee" in violation of the lease terms between October 2022 and December 2022. Dkt. 4 at ¶ 125. As Ms. Segura points out, moreover, her second breach of contract claim is premised on a violation of the covenant of good faith and fair dealing, and I cannot discern a way in which this claim would be affected by the utilities provision. *See* Dkt. 4 at ¶ 165 ("Defendant has abused its discretion by grossly overcharging for its actual costs for valet trash service, pest control, and other fees."). Defendant's motion is therefore denied to the extent it seeks dismissal of Plaintiff's breach of contract claims.

### IV. Unjust Enrichment

As Ms. Segura points out, there is nothing improper about pleading an unjust enrichment claim in the alternative to a breach of contract claim premised on the same facts. Indeed, Colorado law expressly allows for the pursuit of an unjust enrichment claim despite the existence of an express contract. *See Gravina Siding and Windows Co. v. Gravina*, 516 P.3d 37, 46–47 (Colo. App. 2022). And while it is true that a "party generally cannot recover for unjust enrichment" "where there is an express contract addressing the subject of the alleged obligation to pay," Colorado courts have recognized exceptions to this rule where "the express

- 9 -

contract fails or is rescinded" or "the claim covers matters that are outside of or arose after the contract." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). Defendant is therefore wrong, as a matter of law, that Plaintiff's unjust enrichment claim against Avenue5 is precluded at this stage of the litigation.

## V. Declaratory Judgment

Defendant is also wrong that Plaintiff's claim for a declaratory judgment no longer presents an active controversy. *See* Dkt. 10 at 15 ("Courts are not required to issue rulings or judgments on legal matters that have become irrelevant or no longer have practical significance."). Ms. Segura has submitted a sworn declaration that she has been "contacted by a debt collections agency named Starlight Central Billing seeking to collect amounts Avenue5 alleges I owe in connection with my tenancy. . . which includes charges that I dispute in this lawsuit." Dkt. 19-2 at 2. A declaratory judgment stating that these charges were assessed illegally would mean, at least, that she has no duty to pay the debt collection agency and would thus clarify what her rights are with respect to an ongoing legal controversy. That is enough to show that Ms. Segura has standing to pursue this claim. The motion to dismiss must be denied with respect to the declaratory judgment claim, too.

## VI. Possibility of Class Certification

Finally, Defendant has not shown that Plaintiff has failed to assert cognizable class allegations as it relates to her second lease. Ms. Segura alleges that Avenue5 "has subjected class members to a common course of conduct whereby it failed to disclose the junk fees prior to presenting tenants with their leases for execution." Dkt. 19 at 21; *see also* Dkt. 4 at ¶¶95–103 (outlining class action allegations). Avenue5 argues that the class must be limited because "territorial fees" are "uniquely imposed on residents within a specific building," but its conclusion that it would

therefore be impossible to certify any class does not follow. Dkt. 10 at 17. It's possible that a lack of commonality may warrant limiting the scope of any proposed class at the certification stage, but it does not warrant a determination that class certification is impossible now.

Avenue5's assertion that any "putative class member who simply leased an apartment, used a standard lease and was assessed any 'junk' or 'hidden' fees has not been deceived as a matter of law or had their contract breached" is irrelevant. The inquiry at this stage is not whether Ms. Segura will (or is even likely to) prevail on the merits of her claim. The inquiry is simply whether she has alleged facts from which it would be possible to ascertain a class. She has done so, so the motion to dismiss is denied in this respect as well.

## CONCLUSION

It is ORDERED that:

The Motion to Dismiss, **Dkt. 10**, is **denied.**

DATED: March 12, 2025               BY THE COURT:

Daniel D. Domenico
United States District Judge

- 11 -